UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

EVWIN BUTLER                                         CIVIL ACTION NO. 6:15-cv-01778

VERSUS                                              JUDGE DOHERTY

COMMISSIONER OF                                      MAGISTRATE JUDGE HANNA
SOCIAL SECURITY

## REPORT  AND  RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be affirmed.

### ADMINISTRATIVE  PROCEEDINGS

The claimant, Evwin Butler, fully exhausted his administrative remedies prior

to filing this action in federal court.  He filed applications for disability insurance

benefits ("DIB") and supplemental security income benefits ("SSI"), alleging

disability beginning in November 2012.[1]  His applications were denied.[2]  He

requested a hearing.[3]  A hearing was scheduled for January 27, 2014, but the claimant

---

[1]        Rec. Doc. 6-1 at 185, 192.

[2]        Rec. Doc. 6-1 at 81, 82.

[3]        Rec. Doc. 6-1 at 89.

did not appear because he was incarcerated.[4]  A second hearing was held on May 7,

2014 before Administrative Law Judge Philip P. McLeod,[5] and the claimant appeared

and testified, as did his wife.  The ALJ issued a decision on July 2, 2014,[6] concluding

that the claimant was not disabled within the meaning of the Social Security Act

through the date of the decision.  The claimant asked for review of the decision, but

the Appeals Council concluded in March 2015 that no basis existed for review of the

ALJ's decision.[7]  Therefore, the ALJ's decision became the final decision of the

Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).

The claimant then filed this action seeking review of the Commissioner's decision.

## SUMMARY OF PERTINENT FACTS

The claimant was born on Christmas Day 1963.[8]  At the time of the ALJ's

decision, he was fifty years old.  He has an eighth grade education,[9] has difficulty

---

[4]     Rec. Doc. 6-1 at 37-39.

[5]     The hearing transcript is found at Rec. Doc. 6-1 at 42-66.

[6]     Rec. Doc. 6-1 at 19-31.

[7]     Rec. Doc. 6-1 at 4.

[8]     Rec. Doc. 6-1 at 67, 192.

[9]     Rec. Doc. 6-1 at 45, 277.

-2-

reading,[10] and has past relevant work experience as a welder and fitter[11] and as a helper in a commercial fishing operation.[12]  He alleges that he has been disabled since November 2012[13] due to short term memory loss, nervousness, and depression.[14]

On September 18, 2010, the claimant was examined by Dr. Elizabeth Brant at Point of Care Health Solutions in Galliano, Louisiana.[15]  He complained of a two-year-old back injury, short term memory loss, depression, blurry vision, and hearing problems.  He reported drug use, the last time being two months previously.  He reported that he had an eighth grade education.  He also reported that he was able to perform household activities including dressing and feeding himself independently. He had a driver's license but was unable to drive due to his blurry vision.  He stated that he was single, with a step-son and three children of his own.  His most recent employment was doing offshore fitting and welding three years earlier.

Dr. Brant conducted a mental status examination, and she found that the claimant was appropriately dressed but his clothes were somewhat dirty.  He seemed

---

[10]    Rec. Doc. 6-1 at 49.

[11]    Rec. Doc. 6-1 at 229.

[12]    Rec. Doc. 6-1 at 59.

[13]    Rec. Doc. 6-1 at 192, 222, 302.

[14]    Rec. Doc. 6-1 at 222, 302.

[15]    Rec. Doc. 6-1 at 270-274.

sleepy and lethargic.  His speech was slow, and he seemed somewhat uncooperative with answering questions and irritated by the extensive nature of the examination. The claimant's mood was depressed, and his affect was angry.  He was not fully oriented but had a fair ability to follow commands.  His memory was 3 out of 3 at zero minutes and 2 out of 3 at one, three, and five minutes.

Dr. Brant determined that the claimant's ability to push, pull, reach, crouch, squat, and stoop were all within normal limits.  He climbed on and off the examination table independently, and he was able to dress and undress independently. X-rays of his lumbar spine showed good alignment and no evidence of abnormalities. His gait was normal, but his range of motion was limited to 75 degrees in flexion at his lumbar spine.  Dr. Brant detected no spasms, neurological defects, or atrophy.

The claimant's visual acuity without glasses was 20/20 in his right eye and 20/25 in his left eye.  He had mildly decreased hearing in his left ear.  The claimant was already taking Zoloft, Amoxicillin, Cetirizine, Seroquel, Nexium, and multivitamins.

On October 25, 2010, the claimant underwent a psychological evaluation with Scuddy F. Fontenelle, III, Ph.D.[16]  The claimant reported that he had an eighth grade education, multiple arrests as a juvenile, and multiple arrests as an adult.  He

---

[16]        Rec. Doc. 6-1 at 277-280.

-4-

reportedly served a ten-year sentence for distribution of cocaine. The claimant reported that he was unable to maintain regular employment and had last worked in approximately 2006 or 2007. He admitted abuse of substances including alcohol, powder cocaine, and crack cocaine, and stated that he had received substance abuse treatment in prison. He told Dr. Fontenelle that he had never been married, had three children living with his ex-girlfriends, and was currently living with his girlfriend, Ethel Minor.[17]

The claimant appeared paranoid and suspicious, and he accused Dr. Fontenelle of not being a real doctor. He was unable to maintain logical conversation, shifting from one topic to another. His thought content was focused on suspiciousness and guarded ideation. Dr. Fontenelle found that the claimant does not trust people and does not get along well with others. He further found that the claimant exhibited characteristics of antisocial personality. The claimant's mood was agitated and depressed, his affect was blunted, and he made threats toward people while in Dr. Fontenelle's office. Dr. Fontenelle found that the claimant's short term memory of sequential numbers was below average. The claimant was able to add and subtract but not multiply or divide. Based on knowledge of vocabulary and verbal reasoning,

---

[17]    At the time of the hearing in May 2014, the claimant and Ms. Minor had been married for approximately two years. (Rec. Doc. 6-1 at 52).

-5-

Dr. Fontenelle concluded that the claimant's intellect is delayed.  The claimant showed evidence of long-term and short-term memory deficits.  His social reasoning and problem solving skills as well as his personal insight were extremely marginal. His expressive speech and conversational skills were fair.  He had no stable housing but was able to feed himself, dress himself, and take care of his personal hygiene.  He reported that his mother receives his mail and manages his money.  Dr. Fontenelle opined that the claimant likely has problems following rules and specific work-related procedures, and further opined that the claimant's social interaction is negatively impacted by his antisocial features.

The claimant brought in his medication, which included Quetiapine, Nexium, Zoloft, Amoxicillin, and Cetirizine.  Dr. Fontenelle noted that the claimant does receive outpatient mental health treatment.

While in Dr. Fontenelle's office, the claimant and his girlfriend began to argue, with the girlfriend accusing the claimant of lying to her and being domineering, accusatory, and paranoid.

Dr. Fontenelle diagnosed the claimant with Bipolar Disorder (depression phase), Antisocial Personality Disorder, and Poly Substance Dependence, by history.

He also diagnosed the claimant with Cognitive Disorder, NOS (memory deficit).  He assigned a current GAF score of 45, indicating serious symptoms.[18]

The claimant treated at the St. Mary Mental Health Clinic in Morgan City, Louisiana, and/or Magellan from 2012 to 2015.[19]

On June 18, 2012,[20] the claimant told his mental health counselor, Debbie Clark, LPC, that he was stressing out, thinking crazy thoughts, and spacing out.  He did not understand why his family failed to understand.  He stated that he did not like being around his family, friends, or coworkers.  He and his wife had been together for fifteen years and married for three months.  He reported that her anger issues had caused him to leave, and he was living with his daughter.  He stated that he needed his own vehicle and his own place.  He was not sleeping or eating right, he was avoiding others, his work had suffered, and he was separated from his wife.  He reported that he was working at Southland Contracting as a helper, had a tenth grade education, and had no difficulty reading or writing.  Ms. Clark noted that the claimant

---

[18]   Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM–IV") at 32.

[19]   The record contains medical records from these health care providers from 2012 to 2015.  A treatment note (Rec. Doc. 6-1 at 283) indicates that the claimant was also seen at St. Mary from August 16, 2010 to November 22, 2011, but no records from that time period were included in the record.

[20]   Rec. Doc. 6-1 at 283-287.

was irritable, depressed, and having auditory hallucinations and racing thoughts.  She found him to be alert and lethargic.  He was having suicidal thoughts but reported no intent to act on those thoughts.  His concentration was impaired as were his recent memory and immediate recall.  She estimated his intellectual functioning as normal or average.  Ms. Clark diagnosed major depression, recurrent, severe, with psychotic features.  Two other diagnoses – for cocaine dependence and alcohol dependence – are barely legible.  It is unclear whether these diagnoses were highlighted and the highlighting rendered the copy illegible or whether an attempt was made to redact these diagnoses.  The section of the treatment note having to do with substance abuse is more thoroughly blacked out and totally illegible.

Ms. Clark recommended that the claimant be referred for outpatient treatment services.  She noted that he was at a moderate risk for harm due to suicidal thoughts and had a history of substance abuse but no actual use since May 1, 2012 when he failed a drug screen for his parole officer.  Ms. Clark opined that the claimant had a moderate functional impairment due to problems sleeping, isolating from others, and a recent lay off from work due to a recent drop in his performance level.  It is unclear whether this lay off preceded or postdated the claimant's employment with Southland Contracting.

-8-

The record indicates that the claimant received mental health and substance abuse counseling and was prescribed medications for his conditions on August 9, 2012, September 6, 2012, September 20, 2012, and November 28, 2012.[21]   On January 3, 2012, the claimant participated in a group session regarding the connection between drug use and mental health.[22]

On February 21, 2013, William E. Fowler, Ph.D., evaluated the claimant's mental health status at the request of the Office of Disability Determinations.[23]   The claimant's wife drove him to the appointment, even though they were separated.  His clothes appeared to be dirty.  He brought his current medications with him, which were Bupropion xl, Escitalopram, Trazodone, and Fanapt.

The claimant reported that he was having difficulty staying focused on what was happening around him, and Dr. Fowler noted that it was nearly impossible to get information from the claimant.

The claimant reported that he was being treated at Morgan City Mental Health Clinic but further stated that he did not know his diagnosis, did not know what he was being treated for, and claimed that the medication was not helping him.  He reported

---

[21]     Rec. Doc. 6-1 at 302.

[22]     Rec. Doc. 6-1 at 288.

[23]     Rec. Doc. 6-1 at 290-293.

that he used to snort coke and drink beer but had been clean for a year and was receiving treatment for alcohol abuse.  He reported that he completed the eighth grade but cannot read or write well.  He reported that he has no friends and easily goes off on people.  He stated that he had been arrested several times and had been jailed for drug possession.  The claimant reported that he had formerly worked as a welder and fitter but the company for which he had worked for seven or eight years had gone out of business.  The claimant reported that he does not have stable housing, does not drive, and bathes when reminded to do so.  The claimant told Dr. Fowler that he had too many thoughts in his head and that they move too fast.  He denied thoughts of harming himself but stated that he sometimes thinks about acting out.  He reported that he barely sleeps.  He also stated that, for about two years, he had not cared about anybody else and wanted to be by himself and not around others.

Dr. Fowler noted that the claimant appeared at times to not be fully cooperative but he also appeared to be impaired.  He noted that the claimant is an exceedingly poor informant who appeared not to apply much effort and sometimes seemed to be evasive.  Dr. Fowler described the claimant as an individual with a mood disorder with some paranoia who felt the need to exaggerate his deficits, rendering the interview information unreliable.  Dr. Fowler's diagnosis was Exaggeration of

Deficits Today, Mood Disorder NOS with Psychotic Features by history, and Substance Abuse reportedly in recent remission.

On May 13, 2014, the claimant missed an appointment at Magellan.[24]  The treatment note indicates that he had a pattern of no shows and he was being placed on walk-in status.

Correspondence from the claimant's attorney[25] indicates that the claimant was incarcerated on January 27, 2014, when his hearing was originally scheduled to take place, but was scheduled for release on March 3, 2014.

On April 9, 2014,[26] Karen O. Schilling, a licensed clinical social worker at Magellan, recommended that the claimant be enrolled in outpatient treatment services for mental health and substance abuse issues.  She noted that he had moderate to severe depressive symptoms and no sustained period of recovery from the alcohol and cocaine he has used.  He was referred to Magellan by his probation officer, and had not followed through with previous referrals for substance abuse treatment.  Although she found the claimant not to be suicidal or homicidal, she noted that his first instinct

---

[24]     Rec. Doc. 6-1 at 294.

[25]     Rec. Doc. 6-1 at 264.

[26]     Rec. Doc. 6-1 at 295.

when angered or stressed is to harm others.  He was reportedly in a stressful living environment but his wife was supportive of his efforts.

On April 14, 2014,[27] the claimant participated in alcohol and drug counseling, willingly participated in completing a treatment plan, and appeared to gain awareness that he can likely reduce the symptoms of his major depression, cocaine dependence, and alcohol dependence by attending counseling sessions and doctor's appointments on a regular basis.

On April 22, 2014,[28] the claimant met with a drug and alcohol counselor at Magellan.  He was attentive but struggled to remain on task.  It was noted that he had not taken any mental health medication in at least six months and that a condition of his probation was to complete substance abuse treatment.

On May 2, 2014,[29] the claimant was again counseled at Magellan, and the type of service he received was described as alcohol and/or drug therapy.

On May 8, 2014,[30] the claimant participated in a group counseling session.

---

[27]     Rec. Doc. 6-1 at 296.

[28]     Rec. Doc. 6-1 at 297.

[29]     Rec. Doc. 6-1 at 298.

[30]     Rec. Doc. 6-1 at 299.

On that same date,[31] the claimant was evaluated by Dr. Raga H. Malaty at Magellan.  He was on no medication.  He told Dr. Malaty that he had no motivation, tended to hurt others without thinking, and had not been sleeping.  Dr. Malaty found him to be irritable and rambling.  Dr. Malaty found that the claimant's affect was constricted, his mood was depressed, and his attitude was cooperative.  Dr. Malaty also found the claimant's concentration to be good, his perception to be unremarkable, and his thought processes to be logical.  Dr. Malaty further found that the claimant's memory was intact; his intellect, insight, and judgment were fair; and the severity of his symptoms were moderate.  Dr. Malaty diagnosed Cocaine Dependence, Alcohol Dependence, and Major Depression, Recurrent, Severe without Psychotic Features.

## ANALYSIS

### A.  The STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[32]  "Substantial evidence

---

[31]        Rec. Doc. 6-1 at 300.

[32]        *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

-13-

is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[33]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[34]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[35]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[36]  Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[37]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective

---

[33]     *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[34]     *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

[35]     42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[36]     *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[37]     *Martinez v. Chater*, 64 F.3d at 174.

-14-

medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work experience.[38]

## B.   ENTITLEMENT TO BENEFITS

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[39]  Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[40]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[41]  A claimant is disabled only if his physical or mental impairment or impairments are so

---

[38]   *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

[39]   See 42 U.S.C. § 423(a).

[40]   42 U.S.C. § 1382(a)(1) & (2).

[41]   42 U.S.C. § 1382c(a)(3)(A).

severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[42]

## C.   THE EVALUATION PROCESS AND THE BURDEN OF PROOF

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process required the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work at step five.[43]  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.[44]

---

[42]     42 U.S.C. § 1382c(a)(3)(B).

[43]     20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[44]     *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[45] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[46]   The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[47]

The claimant bears the burden of proof on the first four steps.[48]   At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[49]   This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[50]   If the Commissioner

---

[45]       20 C.F.R. § 404.1520(a)(4).

[46]       20 C.F.R. § 404.1545(a)(1).

[47]       20 C.F.R. § 404.1520(e).

[48]       *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[49]       *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[50]       *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[51]

In this case, the claimant was found to have severe impairments resulting from cocaine abuse and alcohol abuse.  Therefore, it was necessary to determine whether those conditions were material to his disability determination.

## D.   THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since November 21, 2012.[52]  This finding is supported by the evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments:  major depressive disorder, recurrent, severe; cocaine abuse; and alcohol abuse.[53]  This finding is supported by evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[54]

---

[51]   *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[52]   Rec. Doc. 6-1 at 22.

[53]   Rec. Doc. 6-1 at 22.

[54]   Rec. Doc. 6-1 at 22.

The ALJ found that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with certain listed nonexertional limitations..[55]

At step four, the ALJ found that the claimant is not capable of performing his past relevant work.[56]

At step five, the ALJ found that the claimant was disabled.

Then, because the claimant was found to have severe alcohol and substance abuse problems, a further analysis was employed.  The ALJ found that if the claimant stopped the substance abuse, the claimant would continue to have a severe impairment or a combination of impairments[57] but those impairments would not meet or equal a list[58] and the claimant would not be disabled if he stopped the substance abuse.[59]  Therefore, the ALJ found that the claimant was not disabled from November 21, 2012 through July 2, 2014 (the date of the decision) because there are jobs in the

---

[55]     Rec. Doc. 6-1 at 24.

[56]     Rec. Doc. 6-1 at 24.

[57]     Rec. Doc. 6-1 at 25.

[58]     Rec. Doc. 6-1 at 26.

[59]     Rec. Doc. 6-1 at 30.

national economy that he could perform if he stopped the substance abuse.[60]  The

claimant challenges this finding.

### E.  THE ALLEGATIONS OF ERROR

The claimant argues that the ALJ erred in finding that drug addiction and

alcoholism were material to the determination of disability in this matter and in

failing to consider the claimant's period of abstinence in determining whether he is

disabled.

### F.  DRUG ADDICTION AND ALCOHOLISM ARE MATERIAL TO THE DETERMINATION OF DISABILITY IN THIS CASE

An individual is not disabled if alcoholism or drug addiction is a contributing

factor material to the determination of disability.[61]  When considering the disability

claim of an individual who abuses drugs or alcohol, it must first be determined

whether the claimant is disabled, using the rules that apply to all claimants.[62]  Then

it must be determined whether the claimant would still be disabled if he stopped using

drugs or alcohol.[63]  If the claimant would remain disabled if he stopped using alcohol

---

[60]      Rec. Doc. 6-1 at 31.

[61]      42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).  See, also, *Smith v. Astrue*, No. 07-51161, 2008 WL 2325637, at *2 (5th Cir. June 6, 2008) (unpublished).

[62]      20 C.F.R. §§ 404.1535(a), 416.935(a).

[63]      20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1).

or drugs, he will be found eligible for benefits.[64]  If, however, the claimant would not remain disabled if he stopped using drugs or alcohol, he will be found ineligible for benefits.[65]  The claimant bears the burden of showing that his drug or alcohol problem is not material to his disability and, consequently, that he would be disabled even if he stopped abusing drugs and alcohol.[66]

In this case, the ALJ applied the five-part sequential analysis and concluded that the claimant is disabled, finding that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorders, there are no jobs that exist in significant numbers in the national economy that the claimant can perform. . . ."[67]  The ALJ then concluded that, even though the claimant would likely continue to have some problems with depression even in the absence of substance abuse,[68] his substance abuse disorder is a contributing factor to the determination of disability, and the claimant would not be disabled if he stopped the substance abuse.[69]

---

[64]    20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

[65]    20 C.F.R. §§ 404.1535(b)(2)(I), 416.935(b)(2)(I).

[66]    *Brown v. Apfel*, 192 F.3d 492, 499 (5th Cir. 1999).

[67]    Rec. Doc. 6-1 at 25.

[68]    Rec. Doc. 6-1 at 25.

[69]    Rec. Doc. 6-1 at 30.

The claimant challenges these findings on the basis that SSR 13–2p requires "objective medical evidence – that is, signs, symptoms, and laboratory findings – from an acceptable medical source that supports a finding that a claimant has DAA."[70] The claimant contends that the record is devoid of such evidence, arguing that "the only DAA evidence comes from statements by [the claimant] that he has used drugs and alcohol. There is no evidence of DAA interactions with law enforcement; no hospital care related to DAA; no laboratory testing suggesting either intoxication or adverse health effects due to substance abuse; and no clinical opinions based on examination that [the claimant] was either presently under the influence of drugs or alcohol, or manifesting observable effects of long term use."[71] This argument ignores the fact that SSR 13-2p states that the objective medical evidence requirement "can be satisfied when there are no overt physical signs or laboratory findings with clinical findings reported by a psychiatrist, psychologist, or other appropriate acceptable medical source based on examination of the claimant."

In this case, Dr. Fontenelle, a psychologist, examined the claimant and diagnosed him with poly substance dependence in October 2010. Dr. Fowler, a

---

[70]     The regulation uses the acronym "DAA" to mean "drug addiction and alcoholism." SSR 13-2p.

[71]     Rec. Doc. 7 at 6.

-22-

psychologist, examined the claimant in February 2013 and diagnosed him with substance abuse reportedly in recent remission.  The claimant's treating physician, Dr. Malaty, diagnosed him with cocaine dependence and alcohol dependence in May 2014.  The claimant was undergoing substance abuse treatment at times documented in the record,[72] and he told Dr. Fontenelle that he underwent substance abuse training and treatment while in prison.[73]  The record also contains evidence that the claimant failed a drug test administered by his parole officer[74] and that substance abuse treatment was a condition of his probation.[75]  Thus, the record contains sufficient evidence of DAA to support the ALJ's finding that the claimant's cocaine abuse and alcohol abuse are severe impairments[76] that are material to the determination of his alleged disability.

## G.    THE CLAIMANT'S ALLEGED ABSTINENCE IS NOT MATERIAL

The claimant argues that the ALJ erred in failing to properly evaluate his disability in light of his alleged period of abstinence.  As a threshold matter, while the

---

[72]    Rec. Doc. 6-1 at 288, 295, 296, 297, 298.

[73]    Rec. Doc. 6-1 at 278.

[74]    Rec. Doc. 6-1 at 287.

[75]    Rec. Doc. 6-1 at 297.

[76]    See, *Marciszewski v. Colvin*, No. 7:14-CV-00059, 2015 WL 4945861, at *9 (N.D. Tex. Aug. 19, 2015).

claimant claims to have been abstinent for a significant time period, Karen O. Schilling, a licensed clinical social worker at Magellan, noted on April 9, 2014, that the claimant had experienced no sustained period of recovery from the alcohol and cocaine he has used.[77]   Therefore, the record does not corroborate the claimant's claimed abstinence.

Assuming, however, that the claimant has been abstinent for the alleged time period, his argument still lacks merit.

SSR 13-2p states that periods of abstinence must be considered in determining whether a claimant's DAA is material to the disability determination.  In his ruling, the ALJ acknowledged the claimant's alleged abstinence.[78]  But this issue lacks merit because the ALJ relied upon the claimant's treating physician, Dr. Malaty, who opined that the claimant's symptoms are moderate in severity.[79]

The ALJ gave great weight to Dr. Malaty's opinions.[80]  This was appropriate because the opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight by the ALJ

---

[77]      Rec. Doc. 6-1 at 295.

[78]      Rec. Doc. 6-1 at 23, 28.

[79]      Rec. Doc. 6-1 at 301.

[80]      Rec. Doc. 6-1 at 29.

-24-

in determining disability.[81]  In fact, when a treating physician's opinion regarding the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give that opinion controlling weight.[82]

Dr. Malaty opined, in May 2014, after the claimant had allegedly been abstinent for over a year, that his remaining psychological symptoms were moderate in severity.  As the ALJ explained in his ruling, to be disabling, mental or psychological impairments must result in "marked" limitations in two areas of functioning, or "marked" limitations in one area of functioning and "repeated" episodes of decompensation.[83]  In this case, there is no evidence of decompensation and no evidence that the claimant has marked limitations in two categories of functionality.  The ALJ used the proper analysis and applied the record evidence to the appropriate analytical model, both while considering ongoing substance abuse and when assuming that substance abuse had been stopped.  Therefore, the ALJ's reliance

---

[81]    *Pineda v. Astrue*, 289 Fed. App'x 710, 712-13 (5th Cir. 2008), citing *Newton v. Apfel*, 209 F.3d at 455.

[82]    20 C.F.R. § 404.1527(c)(2).  See, also, *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

[83]    See 20 C.F.R. Pt. 404, Subpt. P, App. 1, ¶¶ 12.04(B)-(C), 12.06(B), & 12.08(B).

on Dr. Malaty's opinions was well-founded, and his conclusion that the claimant's impairments are not disabling is valid even though the claimant contends that he has been abstinent for a period of time.

## CONCLUSION AND RECOMMENDATION

The undersigned Magistrate Judge finds that the ALJ applied appropriate legal standards in ruling on this case and finds that the ALJ's findings are based on substantial evidence in the record.  The undersigned Magistrate Judge further finds that the claimant failed to prove that his DAA is not a factor material to the determination of whether he is disabled and that the ALJ did not err in analyzing the claimant's alleged period of abstinence.  Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned Magistrate Judge that the decision of the Commissioner be **AFFIRMED** and this matter be dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 6th day of June 2016.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE